1

2

3

4

5

6

7

8                                  UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MELVIN LAVERN EDDINGTON, JR.,              Case No.  1:21-cv-01165-HBK (PC)

12                    Plaintiff,                 SCREENING ORDER DIRECTING THE
                                                 FILING OF AN AMENDED COMPLAINT;
13          v.
                                                 STAND ON THE COMPLAINT AND
14    K. JACKSON, J. SMITH, P. ROGAN, M.         VOLUNTARILY DISMISS CLAIMS
      MONTOYA, B. RODRIGUEZ, C.                  DEEMED NOT COGNIZABLE; OR,
15    GONZALES, M. JOHNSON, and S.
      MAGDALENO,                                 STAND ON COMPLAINT SUBJECT TO
16                                               COURT RECOMMENDING DISMISSAL OF
                    Defendants.                  CLAIMS DEEMED NOT COGNIZABLE TO
17                                               THE DISTRICT COURT[1]

18                                               (Doc. No.  1)

19                                               **AUGUST 14, 2023 DEADLINE**

20

21          Pending before the Court for screening under 28 U.S.C. § 1915A is the pro se civil rights

22   complaint filed under 42 U.S.C. § 1983 by Melvin LaVern Eddington Jr.—a prisoner.  (Doc. No.

23   1, "Complaint").  Upon review, the Court finds the Complaint states a cognizable Eighth

24   Amendment Excessive Use of Force claim against Defendants Jackson, Smith, Rogan, Montoya,

25   Rodriguez, Gonzalez, Johnson, and Magdaleno, but fails to state any other cognizable claims.

26   The Court affords Plaintiff the option to file an amended complaint, file a notice to proceed only

27   _____

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2022).

on his claims deemed cognizable, or stand on his Complaint subject to the Court recommending

the district court dismiss any remaining Defendants and claims deemed not cognizable.

**SCREENING REQUIREMENT**

A plaintiff who commences an action while in prison is subject to the Prison Litigation

Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief

against a governmental entity, its officers, or its employees before directing service upon any

defendant.  28 U.S.C. § 1915A.  This requires the court to identify any cognizable claims and

dismiss the complaint, or any portion, if is frivolous or malicious, if it fails to state a claim upon

which relief may be granted, or if it seeks monetary relief from a defendant who is immune from

such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

At the screening stage, the court accepts the factual allegations in the complaint as true,

construes the complaint liberally, and resolves all doubts in the plaintiff's favor.  *Jenkins v.

McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir.

2003).  A court does not have to accept as true conclusory allegations, unreasonable inferences, or

unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.

1981).  Critical to evaluating a constitutional claim is whether it has an arguable legal and factual

basis.  *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

The Federal Rules of Civil Procedure require only that a complaint include "a short and

plain statement of the claim showing the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).

Nonetheless, a claim must be facially plausible to survive screening.  This requires sufficient

factual detail to allow the court to reasonably infer that each named defendant is liable for the

misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*,

572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not

sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.

*Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Although detailed factual allegations are not

required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required

to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir.

1    2009) (internal quotation marks and citation omitted).

2        The Rules permit a complaint to include all *related claims* against a party and permit

3    joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of

4    transactions or occurrences" where "any question of law or fact common to all defendants will

5    arise in the action."  Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added).  But the Rules prohibit

6    conglomeration of unrelated claims against unrelated defendants in a single lawsuit.  A litigant

7    must file unrelated claims in separate lawsuits.

8        If an otherwise deficient pleading can be remedied by alleging other facts, a *pro se* litigant

9    is entitled to an opportunity to amend their complaint before dismissal of the action.  *See Lopez v.*

10   *Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr*., 66 F.3d

11   245, 248 (9th Cir. 1995).  However, it is not the role of the court to advise a *pro se* litigant on

12   how to cure the defects.  Such advice "would undermine district judges' role as impartial

13   decisionmakers."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131

14   n.13.  Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad

15   faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by

16   amendments previously allowed . . . ." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892

17   (9th Cir. 2010).

18                              **SUMMARY OF THE COMPLAINT**

19       The events giving rise to the Complaint occurred at Wasco State Prison in Wasco,

20   California and the (AHB)[2] Hospital in Bakersfield, California.  (Doc. No. 1 at 1).  Plaintiff's

21   Complaint identifies eight Defendants: (1) Sergeant Kelvin Jackson, (2) Correctional Officer

22   Jeffrey Smith, (3) Correctional Officer Perry Rogan, (4) Correctional Officer Michael Montoya,

23   (5) Correctional Officer Brandon Rodriguez, (6) Correctional Officer Carlos Gonzalez,

24   (7) Correctional Officer Matthew Johnson, and (8) Correctional Officer Sergio Magdaleno.  (*Id.*

25   at 2-3).[3]  The Complaint alleges the Defendants used excessive force in violation of Plaintiff's

26

27   [2] The Complaint does not state what the acronym "AHB" represents, but in context, the Court construes the acronym as referring to Adventist Health Bakersfield.

28   [3] The Court refers to the page numbers of the Complaint as reflected on the Court's CM/ECF system instead of the page numbers on the Plaintiff's Complaint.

rights under the Eighth and Fourteenth Amendments.  (*Id*. at 5, 15-16).  The Complaint sets forth the following facts, which are presumed true at this stage of the proceedings.

On July 31, 2019, Plaintiff was waiting outside of the program office for his social worker when he accused a female "staff worker" of interfering with his phone calls.  (*Id*. at 5).  An unidentified officer ordered Plaintiff to stop talking to the female; however, Plaintiff ignored the order and told her to stop interfering with his calls.  (*Id*. at 6).

Defendants Jackson, Rogan, Smith, Montoya, and Rodriguez then ordered Plaintiff to stop speaking with the female and return to return to his housing unit.  (*Id*.).  Plaintiff refused the order.  (*Id*.).  While Defendant Jackson spoke to Plaintiff, Defendant Rogan "without reason or any warning[,] sprayed [Plaintiff] with pepper spray] in [his] left face."  (*Id*. at 6 -7).  Plaintiff turned and walked a few steps away, used his shirt to wipe his face, and then walked back towards the Defendants, stopping seven feet from them.  (*Id*. at 7).  Defendant Rogan again administered pepper spray into Plaintiff's eyes and face and then all five Defendants tackled Plaintiff.  (*Id*.).

While on the ground, Defendant Rogan handcuffed Plaintiff.  (*Id*.).  Defendants then punched, kicked, and grinded Plaintiff's face into the ground.  (*Id*. at 7-8).  Defendant Montoya used a metal baton to strike Plaintiff's right cheek three or four times.  (*Id*.).  Plaintiff had difficulty breathing due to Defendants Rogan, Montoya, Smith, and Rodriguez applying pressure using their body weight.  (*Id*. at 8-9).  Plaintiff told Defendants he was having difficulty breathing but they continued to add more pressure.  (*Id*. at 9).

Plaintiff was placed in handcuffs and leg restraints and escorted to the Facility A Program Office.  (*Id*.).  When Plaintiff learned that Defendants were going to place him in a holding cage, he stopped walking and refused to go into the holding cage.  (*Id*.).  As a result, Defendants punched Plaintiff, yelled at him to get into the cage, and eventually lifted him off the ground and forced him into the holding cage.  (*Id*. at 9-10).  While in the holding cage, Defendants Smith and Rogan repeatedly punched and kicked Plaintiff while yelling at him to stay in the cage.  (*Id*. at 10).  Plaintiff was also struck on the face with a metal baton by Defendant Smith when he used his foot to prevent the door of the holding cage from closing.  (*Id*. at 10-11).

Once in the holding cage, Plaintiff spat and was taken to the ground.  (*Id*. at 11-12).  While Defendants continued to punch Plaintiff, Defendant Jackson put a spit hood on him.  (*Id*. at 11-13).  Handcuffs were re-applied tightly to Plaintiff's wrists and legs while an unidentified officer and Defendant Jackson moved the handcuffs in a back-and-forth motion that cut off his circulation.  (*Id*.).  Plaintiff screamed in pain and lost consciousness.  (*Id*.).

Later that day at 5:30 p.m., Plaintiff was transported to AHB Hospital Emergency Room.  (*Id*. at 16).  Plaintiff woke up in a hallway at AHB and heard Defendants Magdaleno and Gonzalez express their frustration with having to stay at the hospital.  (*Id*.).  Defendant Gonzalez tried to persuade Plaintiff to leave the hospital before seeing the doctor, but Plaintiff refused.  (*Id*. at 17).  Defendant Gonzalez responded by telling Plaintiff they were going to take him back to the prison and they would beat him up if he tried to escape or attack the correctional officers.  (*Id*. at 17).  Defendant Gonzalez then closed a curtain in front of Plaintiff's hospital bed and called for other officers.  (*Id*.).  Plaintiff sat up and made a sound like he was going to start spitting and Defendant Gonzalez grabbed Plaintiff by the neck and punched him in the mouth.  (*Id*.).  Defendant Gonzalez then pulled Plaintiff out of the hospital bed and pushed him to the ground face-first.  (*Id*.)  Defendant Gonzales held Plaintiff down on the ground while Defendants Magdaleno, Gonzalez and Johnson punched Plaintiff.  (*Id*. at 17-18).  Defendant Johnson also pushed the tip of his metal baton into the middle of Plaintiff's spine.  (*Id*.).

As relief, Plaintiff seeks five million dollars in "punitive damages, general damages, compensatory damages, prejudgments interest, exemplary damages, physical damages, mental damages, emotional damages, attorney fees and cost."  (*Id*. at 19).

## APPLICABLE LAW AND ANAYSIS

### A.  Official Capacity Claims

The Complaint sues all Defendants in both their official and individual capacities.  A claim against any correctional officer in his or her official capacity is the same as a suit against the employing agency—here, the California Department of Corrections and Rehibitions ("CDCR").  *Monell v. New York Dep't of Social Services*, 436 U.S. 685, 690 n. 55 (1978).  However, an official capacity claim cannot proceed unless a complaint alleges facts to establish

that the official acted pursuant to a policy or custom.  *Id*.  Here, the Complaint contains no allegations that any Defendant acted pursuant to a policy or custom.  Thus, the Complaint fails to state a claim against any of the Defendants in their official capacity.

### B.  Fourteenth Amendment Excessive Use of Force

As an initial matter, the Court addresses the appropriate legal standard for Plaintiff's excessive use of force claims.  "Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause."  *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (holding that, under the Due Process Clause, a detainee may not be punished prior to conviction)).  Because it is uncontroverted that Plaintiff was always during the alleged incidents a state inmate and not a pretrial detainee, he cannot bring an excessive force claim under the Fourteenth Amendment.

### C.  Eighth Amendment Excessive Use of Force

Prison officials who use excessive force against inmates violate the inmate's Eighth Amendment right to be free from cruel and unusual punishment.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir., 2002).  "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  When determining whether the force was excessive, the court looks to the "extent of injury suffered by an inmate . . . the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  *Id*. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  *Hudson*, 503 U.S. at 9.

1

**Claims at WASCO**

2          At this stage of the process, the complaint alleges sufficient facts to state a cognizable

3    excessive force claim against Defendants Jackson, Rogan, Smith, Montoya, and Rodriguez.  First,

4    putting aside the punching and kicking of Plaintiff, Defendant Rogan administered pepper spray

5    against Plaintiff twice, without a warning.  While Plaintiff acknowledges he refused to comply

6    with an order and then took steps toward the officers, both of which may qualify to justify the use

7    of force,[4] the Complaint states a cognizable claim of excessive force against Defendant Rogan

8    concerning the administering of the pepper spray to proceed further because there was no warning

9    before the pepper spray was administered.  *See Williams v. Young*, 2015 WL 4617985, at *10-11

10   (E.D. Cal. Jul. 31, 2015) ("There are three general areas in which courts have held that use of

11   pepper spray or other chemical agents may constitute excessive force…[f]irst…when an officer

12   used far more than a reasonable quantity of a chemical agent[,]…second…when a chemical agent

13   was used without a prior verbal command[, and]…third…after a prisoner is pepper sprayed (even

14   for a legitimate reason), officers then withhold appropriate medical attention."); *see also Owens v.*

15   *Banuelos*, 2020 WL 5110294, at *2 (E.D. Cal. Aug. 28, 2020) (finding triable Eighth Amendment

16   claim where officer pepper sprayed inmate without warning or provocation).

17          After the pepper spray was administered, Defendants Jackson, Rogan, Smith, Montoya,

18   and Rodriguez continued to punch, kick, and use a metal baton against Plaintiff multiple times

19   while he was in handcuffs, on the ground, and under their control.  Even after Defendants had

20   later placed Plaintiff in a holding cage, Defendants again continued to assault Plaintiff, including

21   twisting the cuff on Plaintiff's limbs in a motion that caused Plaintiff extreme pain.  Plaintiff

22   suffered injuries from Defendants Jackson, Rogan, Smith, Montoya, and Rodriguez's use of force

23   that required his transport to the hospital; thus, the Complaint states a cognizable Eight

24   Amendment excessive force claim against Defendants Jackson, Rogan, Smith, Montoya, and

25   Rodriguez stemming from the kicking and punching of Plaintiff while handcuffed and on the

26

27   [4] The Court is cognizant that certain circumstances, such as an immediate threat to officer safety,
diminishes the necessity for a prior warning.  But this issue is more proper for summary judgment or a
28   jury, not at the screening stage.

ground and in the cage.

**Claim at AHB**

The Complaint also contains sufficient facts at this stage to state a cognizable excessive use of force claim against Defendants Gonzalez, Johnson, and Magdaleno arising from their use of force at AHB the evening of July 31, 2019.  Plaintiff alleges he was lying in the hospital bed and presented no threat of physical harm to Defendants Gonzalez, Johnson and Magdaleno.  In response to his making a sound like he was going to spit, these three correctional officers repeatedly kicked and punched Plaintiff after dragged him out of his hospital bed and to the ground.  Defendants then continued to punch and kick Plaintiff while he was on the ground.  As a result, Plaintiff suffered injuries from the attack.  Accordingly, the Complaint states a cognizable Eighth Amendment excessive use of force claim concerning the events at AHB.

## OPTIONS

Liberally construing the Complaint and accepting the allegations as true, the Court finds the Complaint states a cognizable Eighth Amendment claim for excessive use of force against Defendants Jackson, Smith, Rogan, Montoya, Rodriguez, Gonzalez, Johnson, and Magdaleno, in their individual capacities, but no other claim.  To continue the prosecution of this action, Plaintiff must take one of the following three options **no later than** August 14, 2023:

**First Option:**  Because the Court cannot determine that the filing of an amended complaint cannot cure the deficiencies identified above, the Court will afford Plaintiff an opportunity to file an amended complaint if he chooses.  The amended complaint supersedes (replaces) the original complaint and, thus, the amended complaint must be free-standing and complete.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989).  Plaintiff should use the Court's approved Prisoner Civil Rights Complaint Form to file his amended complaint and must title it "First Amended Complaint."  Plaintiff may not raise unrelated or new claims or add new defendants if he chooses to file an amended complaint.

**Second Option**:  Plaintiff may file a Notice under Rule 41 stating he intends to stand on his current Complaint as screened herein and proceed only on his Eighth Amendment excessive force claims against Defendants Jackson, Smith, Rogan, Montoya, Rodriguez, Gonzalez, Johnson,

1  and Magdaleno in their individual capacities, thereby dismissing the Fourteenth Amendment and

2  official capacity claims the Court deemed not cognizable.  The Court would then order service on

3  Defendants Jackson, Smith, Rogan, Montoya, Rodriguez, Gonzalez, Johnson, and Magdaleno,

4  who has not yet been served, and direct these Defendants to respond to the Complaint.

5  **Third Option**: Plaintiff may stand on his Complaint subject to the undersigned issuing a

6  Findings and Recommendations to dismiss the Fourteenth Amendment and official capacity

7  claims the Court has deemed not cognizable.

8  If Plaintiff fails to timely respond to this Court Order, *i.e.*, fails to elect and notify the

9  Court of any of the three options, the undersigned will recommend that the district court dismiss

10  this case as a sanction for Plaintiff's failure to comply with a court order and for failing to

11  prosecute this action after its determination that the complaint failed to state a claim.  *See* Local

12  Rule 110; Fed. R. Civ. P. 41(b).

13  Accordingly, it is **ORDERED:**

14  1.  No later than August 14, 2023,  Plaintiff shall elect one of the three options and

15  deliver to correctional officials for mailing: (a) a First Amended Complaint; (b); a Notice under

16  Rule 41 that he intends to stand on the Complaint as screened thereby voluntarily dismissing the

17  Fourteenth Amendment and official capacity claims for the reasons stated in this Order; (c) a

18  Notice that he intends to stand on his Complaint subject to the undersigned recommending the

19  district court dismiss the claims deemed not cognizable.

20  2.  If Plaintiff fails to timely comply with this Court Order or seek an extension of

21  time to comply, the Court will recommend the district court dismiss this action for Plaintiff's

22  failure to comply with this Court Order and prosecute this action.

23  3.  The Clerk of Court shall include a blank civil rights complaint form for Plaintiff's

24  use as appropriate.

25  Dated:   July 13, 2023

26  HELENA M. BARCH-KUCHTA
   UNITED STATES MAGISTRATE JUDGE

27

28

9